IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

AVENTINE RENEWABLE ENERGY, INC.,

        Plaintiff,

v.

GLACIAL LAKES ENERGY, LLC

        Defendant.

Civ. Action No. _____

## COMPLAINT

Plaintiff, Aventine Renewable Energy, Inc., (the "Plaintiff" or "ARE"), by and through its undersigned counsel, for its complaint against the above-captioned defendant, Glacial Lakes Energy, LLC ("Defendant" or "Glacial Lakes"), hereby alleges upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

### SUMMARY OF THE ACTION[1]

1.    This is an action against Glacial Lakes for breach of contract and declaratory judgment arising from a business relationship between ARE and Glacial Lakes. ARE's claims arise from the continuing breaches by Glacial Lakes of the Termination Agreement that provided for, among other things, the termination of the Original Agreement, Glacial Lakes' obligation to pay the Termination Fee, ARE's sublease of certain railcars to Glacial Lakes and Glacial Lakes' agreement to fully assume ARE's rights and obligations with respect to the Subleased Railcars and to obtain a release of ARE of such obligations.

2.    In particular, Glacial Lakes breached its obligations arising under the Termination Agreement by, among other things: (i) failing to fulfill its obligations with respect to the

---

[1]    Capitalized terms used but not otherwise defined in the Summary of the Action section shall have the meanings ascribed to such terms in the body of the Complaint.

01:13911094.2

Subleased Railcars, as required by Section 5.C. and Section 5.D. of the Termination Agreement; (ii) failing to indemnify, defend and hold ARE harmless from and against all claims, liabilities, damages, costs and expenses as required by Section 5.F. of the Termination Agreement; and (iii) failing to pay the Termination Fee as required by Section 7 of the Termination Agreement.

3. As a result, ARE is entitled to offset, in their entirety, the amounts owed by Glacial Lakes to ARE on account of Glacial Lakes' breaches of the Termination Agreement against the amounts ARE owes to Glacial Lakes for the Unpaid True-Up Payment, and to recover damages in excess of the amounts ARE owes to Glacial Lakes.

## PARTIES

4. Plaintiff ARE is a Delaware corporation with its corporate headquarters and principal place of business located at 1300 S. 2nd Street, Pekin, Illinois 61554. ARE is a leading producer and seller of ethanol and related products and by-products. At all relevant times, ARE conducted its business of producing and selling ethanol and related products in its own right and through its agents, employees and other authorized representatives.

5. Upon information and belief, Defendant Glacial Lakes is a South Dakota limited liability company with its principal place of business located at 301 20th Avenue, Watertown, South Dakota. Upon information and belief, Glacial Lakes is a producer and seller of fuel grade ethanol. Upon information and belief, at all relevant times, Glacial Lakes conducted its business of producing and selling fuel grade ethanol to ARE in its own right and through its agents, employees and other authorized representatives.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists among the parties and the amount in controversy

exceeds $75,000.

7. This Court may properly exercise personal jurisdiction over Defendant Glacial Lakes by virtue of Glacial Lakes' continuous and systematic contacts with Illinois through its offering for sale and/or sales of ethanol to ARE and its entry into contracts relating to this action with ARE.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

### A.   The Termination Agreement and Glacial Lakes' Breaches Thereof

9. Glacial Lakes produces ethanol and participated in ARE's marketing alliance before ARE's wind-down of such marketing alliance prior to the Petition Date (defined below). Prior to 2004, ARE had purchased and marketed ethanol produced by Glacial Lakes at the Watertown, South Dakota facility. The recent business relationship between ARE and Glacial Lakes was set forth in that certain Ethanol Marketing Agreement dated as of August 3, 2004, as amended by agreement dated on February 26, 2007 (the "Original Agreement").

10. In late 2008 and the beginning of 2009, ARE and Glacial Lakes (collectively, the "Parties") agreed to wind-down their business relationship and terminate their respective obligations under the Original Agreement.

11. On January 8, 2009, the Parties entered into the Termination Agreement, a copy of which is attached hereto as Exhibit A.

12. The Termination Agreement provided for, among other things, the termination of the Original Agreement effective as of January 16, 2009 (the "Termination Date"), payment of a termination fee to ARE in the aggregate amount of $375,000 (the "Termination Fee"), ARE's sublease of certain railcars to Glacial Lakes, and Glacial Lakes' agreement to fully assume

01:13911094.2

3

ARE's obligations associated with certain identified railcars and to obtain a release of ARE from such obligations.

13. Prior to entering into the Termination Agreement, ARE was a party to multiple railcar lease agreements (each a "<u>Railcar Lease</u>" and collectively, the "<u>Railcar Leases</u>") pursuant to which ARE leased railcars from certain third-parties to transport ethanol on behalf of ARE's marketing alliance members, including Glacial Lakes.

14. The Railcar Leases are comprised of the following: (i) that certain Car Service Contract dated October 1, 2008, as amended, including riders thereto, with GATX Financial Corporation; (ii) those certain Master Car Service Contracts having various dates, as amended, including riders thereto, with American Railcar Leasing LLC; (iii) that certain Car Leasing Agreement dated July 22, 2004, as amended, including riders thereto, with First Union Rail; and (iv) that certain Union Tank Car Company Car Service Agreement dated August 1, 1991, as amended, including riders thereto (the "<u>UTC Service Agreement</u>"), with Union Tank Car Company ("<u>UTC</u>").

15. Pursuant to, and as consideration for entering into, the Termination Agreement, ARE agreed to sublease certain railcars (collectively, the "<u>Subleased Railcars</u>") to Glacial Lakes, all of which ARE had leased from third-party lessors pursuant to the Railcar Leases.

16. Section 5.B. of the Termination Agreement provides, in pertinent part, that:

> Notwithstanding the termination of the Original Agreement, on and after the Termination Date, *ARE hereby subleases to [Glacial Lakes], and [Glacial Lakes] hereby accepts such sublease from ARE, the [Subleased Railcars] listed on Exhibit A ... The foregoing subleases shall be subject to the terms and conditions of the respective Railcar Leases applicable to the Subleased Railcars, all of which are incorporated herein by reference.* The term of each of the foregoing subleases for each of the Subleased Railcars shall commence upon the Termination Date, and shall expire upon the earlier of (i) expiration of the lease term for such Subleased Railcar under the applicable Railcar

01:13911094.2

4

>   Lease or (ii) the date on which all of ARE's lease rights and obligations with respect to such Subleased Railcar is transferred to and assumed by [Glacial Lakes] as provided in Sections 5.D. and E. below through assignment and/or execution of a new lease contract and riders with the applicable lessor of such Subleased Railcar.

(*See* Termination Agreement at Section 5.B. (emphasis added)).

17. The Subleased Railcars are specifically identified on Exhibit A to the Termination Agreement. As indicated on such exhibit, ARE originally leased 224 of the 345 Subleased Railcars from UTC (collectively, those 224 railcars are the "UTC Subleased Railcars").

18. During the term of the sublease, Glacial Lakes was responsible for "payment of the monthly rental rates applicable under the Railcar Leases for the Subleased Railcars and any and all other costs, charges and expenses due under the Railcar Leases with respect to the Subleased Railcars ...." (*Id.* at Section 5.C.).

19. After the Termination Date, Glacial Lakes requested six sand-filled railcars (such railcars are commonly referred to as "Buffer Cars") to be used in connection with certain Subleased Railcars.

20. The Parties agreed that Glacial Lakes would pay ARE the sum of $18,083.16 (the "Sand Charge") for the sand to be supplied by ARE for the six Buffer Cars being provided to Glacial Lakes by GATX Financial Corporation ("GATX").

21. ARE supplied the sand required for the six Buffer Cars and Glacial Lakes received those railcars as agreed to by the Parties and GATX. However, Glacial Lakes failed to pay ARE the $18,083.16 Sand Charge as required by Section 5.C. of the Termination Agreement.

22. Accordingly, Glacial Lakes breached Section 5.C. of the Termination Agreement and ARE is entitled to receive the unpaid $18,083.16 Sand Charge.

01:13911094.2

23. The Parties further agreed that it was "[t]he intent of the Parties to fully transfer to [Glacial Lakes], and for [Glacial Lakes] to fully assume, all of ARE's rights and obligations with respect to the Subleased Railcars and to obtain a release of ARE from such obligations from the lessors of such Subleased Railcars, using commercially reasonable efforts, (i) on or before January 31, 2009 with respect to the GATX, ARL and FUR Subleased Railcars, and (ii) as soon as practicable thereafter with respect to the UTC Subleased Railcars ...." (*Id.* at Section 5.D.).

24. The Parties recognized that the process for Glacial Lakes obtaining a release for ARE of the obligations with respect to the UTC Subleased Railcars may have required execution of a new lease or three party agreement among UTC, ARE and Glacial Lakes. (*Id.* at Section 5.E.).

25. In addition to agreeing to fully assume all of ARE's obligations related to the Subleased Railcars and obtain a release of ARE from such obligations, Glacial Lakes also agreed to indemnify, defend and hold ARE harmless from all claims, liabilities and damages resulting from any breach by Glacial Lakes of the subleases of the Subleased Railcars or any other agreement to which Glacial Lakes becomes a party with respect to the Subleased Railcars. (*Id.* at Section 5.F.).

26. Section 5.F. of the Termination Agreement provides that:

> [Glacial Lakes] shall indemnify, defend and hold ARE harmless from and against all claims, liabilities, losses damages, costs and expenses (including reasonable attorneys' fees) arising out of or resulting from any breach by [Glacial Lakes], its parents, subsidiaries or affiliates, or its or their respective employees, officers, agents or representatives of (i) the subleases of the Subleased Railcars to [Glacial Lakes] hereunder and (ii) any other agreement to which [Glacial Lakes] becomes a party with respect to the Subleased Railcars, including, but not limited to, the New UTC Lease.

(*Id.*).

01:13911094.2

27. The Termination Agreement further obligated Glacial Lakes to pay to ARE the Termination Fee ($375,000) as consideration for ARE's agreement to terminate the Original Agreement. (*Id.* at Section 7).

28. Glacial Lakes was required to pay the Termination Fee to ARE in the following manner: (i) a $25,000 payment to ARE on or before the Termination Date for the period from the Termination Date to the end of January 2009; and (ii) monthly installments in the amount of $50,000 on or before the first of the month beginning in February, 2009 and ending in August 2009. (*Id.*)

29. Any portion of the Termination Fee not paid by Glacial Lakes "shall bear interest at the lower of (i) the prime rate published in *The Wall Street Journal* plus 2% per annum, or (ii) the maximum lawful interest rate, from the date due until the date payment is received in full by ARE." (*Id.*).

30. Glacial Lakes paid the initial $25,000 Termination Fee installment payment and the $50,000 installment payment for February 2009. However, Glacial Lakes failed to pay any additional portion of the Termination Fee.

31. Accordingly, Glacial Lakes breached the Termination Agreement and ARE is entitled to receive the unpaid portion of the Termination Fee ($300,000), plus interest.

**B.   The Chapter 11 Cases and the Union Tank Claim**

32. On April 7, 2009 (the "Petition Date"), ARE and its affiliates (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

33. By Order dated May 5, 2009, the Bankruptcy Court approved the Debtors' rejection of, among other things, the riders to the UTC Service Agreement under which ARE had originally leased the UTC Subleased Railcars, effective as of the Petition Date.

34. On September 3, 2009, UTC filed proof of claim number 316 (the "Union Tank Claim"), a copy of which is attached hereto as Exhibit B.

35. Pursuant to the Union Tank Claim, UTC asserted a general unsecured claim against ARE in the total amount of $82,553,987.47 on account of, among other things, certain estimated end charges, railcar cleaning costs and unpaid rental payments for leased railcars.

36. Of the $82,553,987.47 in damages, costs, unpaid rental payments and/or other expenses asserted by UTC against ARE, more than $9.6 million was attributed to the UTC Subleased Railcars.

37. ARE disputed the validity and amount of the Union Tank Claim and subsequently engaged in extensive negotiations with UTC.

38. The negotiations with UTC resulted in ARE and UTC entering into a stipulation (the "UTC Stipulation") providing for the liquidation and allowance of the Union Tank Claim in the amount of $27,562,095.00 (the "Allowed UTC Claim").

39. On October 3, 2011, the Bankruptcy Court entered an order approving the UTC Stipulation in all respects. A copy of that order (with the UTC Stipulation attached thereto) is attached hereto as Exhibit C.

40. Pursuant to the UTC Stipulation, approximately $3,365,137 of the Allowed UTC Claim amount is attributable directly to ARE's liabilities and obligations concerning the UTC Subleased Railcars.

41. The damages asserted by UTC against ARE and ultimately allowed through the UTC Stipulation and Allowed UTC Claim stem, in part, from ARE's purported liabilities and obligations concerning the UTC Subleased Railcars.

42. As noted above, however, ARE subleased the UTC Subleased Railcars to Glacial Lakes and Glacial Lakes agreed to accept such subleases. (*See* Termination Agreement at Section 5.B.).

43. Glacial Lakes was responsible for the payment of monthly rent and any and all other costs, charges and expenses associated with the Subleased Railcars during the term of the sublease. (*Id.* at Section 5.C.).

44. Glacial Lakes expressly agreed to "fully assume all of ARE's rights and obligations with respect to the Subleased Railcars and to obtain a release of ARE from such obligations from the lessors of such Subleased Railcars ...." (*Id.* at Section 5.D.).

45. Glacial Lakes has failed to fulfill its rental and other payment obligations with respect to the UTC Subleased Railcars, as required by Section 5.C. of the Termination Agreement.

46. Glacial Lakes has further failed to fulfill its obligations with respect to the UTC Subleased Railcars, as required by Section 5.D. of the Termination Agreement.

47. Glacial Lakes has further failed to indemnify, defend and hold ARE harmless from and against all claims, liabilities, damages, costs and expenses arising in connection with the UTC Subleased Railcars, as required by Section 5.F. of the Termination Agreement.

48. Accordingly, Glacial Lakes has failed to fulfill its contractual obligations and has breached the Termination Agreement.

49. As a result of Glacial Lakes' breaches of the Termination Agreement, ARE has suffered damages in excess of $3.6 million.

C. **American Railcar Leasing Claim**

50. On August 3, 2009, American Railcar Leasing, LLC ("ARL") filed proof of claim number 189 (the "ARL Claim"), a copy of which is attached hereto as Exhibit D.

51. Pursuant to the ARL Claim, ARL asserted a general unsecured claim against ARE in the total amount of $327,861.88 on account of certain railcar rental costs, service and repair fees, and mileage equalization charges attributable to certain of the Subleased Railcars identified on Exhibit A to the Termination Agreement that ARE had leased from ARL (such railcars, the "ARL Subleased Railcars").

52. In accordance with the ARL Claim, the mileage equalization charges (the "Equalization Charges") accounted for approximately $28,022 of the $327,861.88 claimed by ARL. Of the $28,022 in Equalization Charges, approximately $4,338 is attributable to the ARL Subleased Railcars.

53. Glacial Lakes was responsible for the payment of monthly rent and any and all other costs, charges and expenses associated with the Subleased Railcars during the term of the sublease, including, without limitation, the Equalization Charges. (Termination Agreement at Section 5.C.).

54. Glacial Lakes failed to fulfill its obligations to pay the Equalization Charges relating to the ARL Subleased Railcars, as required by Section 5.C. of the Termination Agreement.

55. Accordingly, Glacial Lakes has failed to fulfill its contractual obligations and has breached Section 5.C. of the Termination Agreement. Glacial Lakes' breach of Section 5.C. of

the Termination Agreement in respect of the Equalization Charges for the ARL Subleased Railcars has caused ARE to suffer damages in excess of $4,338.

56.     As a result of the foregoing breaches of the Termination Agreement by Glacial Lakes relating to the Sand Charge, UTC Subleased Railcars, and the Equalization Charges, ARE has suffered damages in excess of $3.6 million.

### D.     Glacial Lakes' Claim

57.     On June 8, 2009, each of the Debtors filed their Schedules of Assets and Liabilities (as amended, collectively, the "Schedules") and Statements of Financial Affairs, and, on July 8, 2009 and September 8, 2009, the Debtors amended the Schedules.

58.     Glacial Lakes was listed in the Schedules as holding a claim against ARE in the amount of $339,071.90 (the "Claim"). (*See* Docket No. 189 – *In re Aventine Renewable Energy Holdings, Inc. et al.*, Case No. 09-11214 (Bankr. D. Del.) (KG)).

59.     The Claim represents the amounts owed by ARE to Glacial Lakes for the January, 2009 true-up payment (the "Unpaid True-Up Payment") under the terms of Section 5.C. of the Original Agreement.

### E.     The Adversary Proceedings in the Bankruptcy Court

60.     On December 31, 2012, ARE commenced three actions (the "Adversary Proceedings") in the Bankruptcy Court by filing a complaint (collectively, the "Complaints") against each of Glacial Lakes, Aberdeen Energy, LLC and Redfield Energy, LLC (collectively, the "Defendants").

61.     Upon information and belief, Defendants were and remain affiliates, and the same individual served as each Defendant's Chief Executive Officer during the time period relevant to the Complaints.

01:13911094.2

11

62.     With minor differences, each Complaint sought essentially the same relief against the applicable Defendant based on their breaches of the respective Termination Agreement and each Complaint was based on substantially similar facts and theories.

63.     On May 10, 2013, Defendants filed a consolidated motion to dismiss the Complaints (the "Motion") asserting that the Complaints should be dismissed in their entirety because the Bankruptcy Court lacked subject matter jurisdiction and/or the Debtors' plan of reorganization purportedly had failed to preserve ARE's claims against the Defendants.

64.     On June 7, 2013, ARE filed its answering brief in opposition to the Motion.

65.     On July 16, 2013, the Bankruptcy Court entered an order on the Motion (the "Dismissal Order"). A copy of the Dismissal Order is attached hereto as Exhibit E.

66.     Pursuant to the Dismissal Order, the Bankruptcy Court dismissed the Adversary Proceedings for lack of subject matter jurisdiction on the grounds that "the plan does not provide for the requisite close nexus that would enable the [Bankruptcy] Court, as a bankruptcy court with limited jurisdiction, to adjudicate the claims." (Dismissal Order at 4).

67.     The Bankruptcy Court also held that ARE's causes of action against Glacial Lakes and the other Defendants were not barred because "the plan adequately preserves the causes of action asserted in the Complaints by vesting all prepetition causes of action in the reorganized debtors . . ." (*Id.*)

## COUNT I

**(Breach of Contract)**

68.     Plaintiff ARE repeats and incorporates by reference its allegations contained in Paragraphs 1 through 67 above as if fully set forth herein.

69. The Termination Agreement constitutes a valid and enforceable agreement between ARE and Glacial Lakes.

70. Glacial Lakes breached the Termination Agreement by failing to fulfill its payment obligations in respect of the Sand Charge relating to the Buffer Cars used in connection with certain Subleased Railcars as required by Section 5.C. of the Termination Agreement

71. Glacial Lakes breached the Termination Agreement by failing to fulfill its obligations in respect of the Equalization Charges relating to the ARL Subleased Railcars as required by Section 5.C. of the Termination Agreement.

72. Glacial Lakes breached the Termination Agreement by failing to fulfill its obligations to pay certain rental payments associated with the UTC Subleased Railcars as required by Section 5.C. of the Termination Agreement.

73. Glacial Lakes breached the Termination Agreement by failing to fulfill its obligations associated with the UTC Subleased Railcars as required by Section 5.D. of the Termination Agreement.

74. Glacial Lakes breached the Termination Agreement by failing to indemnify, defend and hold ARE harmless from all claims, liabilities and damages resulting from any breach by Glacial Lakes (or any of its affiliates, agents, employees) of the subleases of the Subleased Railcars to Glacial Lakes as required by Section 5.F. of the Termination Agreement.

75. Glacial Lakes breached the Termination Agreement by failing to pay the Termination Fee, including the applicable interest, to ARE as required by Section 7 of the Termination Agreement.

76. As a result of Glacial Lakes' breaches of the Termination Agreement, ARE has suffered damages and losses, including, without limitation, direct costs relating to obligations

arising under and related to the UTC Subleased Railcars in an amount exceeding $3.6 million, and damages resulting from the failure to pay the remaining portion of the Termination Fee.

77.  ARE is entitled to recover damages from Glacial Lakes in excess of ARE's liability to Glacial Lakes on account of the Unpaid True-Up Payment.

## COUNT II

### (Declaratory Judgment Regarding ARE's Right to Setoff)

78.  Plaintiff ARE repeats and incorporates by reference its allegations contained in Paragraphs 1 through 77 above as if fully set forth herein.

79.  The Termination Agreement constitutes a valid and enforceable agreement between ARE and Glacial Lakes.

80.  Pursuant to applicable New York state law, ARE is entitled to offset the more than $3 million in damages it incurred as result of Glacial Lakes' breaches of the Termination Agreement against ARE's liability to Glacial Lakes on account of the Unpaid True-Up Payment.

81.  An actual controversy exists between the Parties regarding ARE's right to apply the damages incurred as a result of Glacial Lakes' breaches of the Termination Agreement to offset, in their entirety, the amounts owed to Glacial Lakes on account of the Unpaid True-Up Payment.

82.  A prompt judicial determination of the respective rights and duties of the Parties in these respects is necessary and appropriate.

## COUNT III

### (Attorneys' Fees)

83.  Plaintiff ARE repeats and incorporates by reference its allegations contained in Paragraphs 1 through 82 above as if fully set forth herein.

01:13911094.2

84. The Termination Agreement constitutes a valid and enforceable agreement between ARE and Glacial Lakes.

85. Glacial Lakes breached its obligations under Section 5.F. of the Termination Agreement by failing to indemnify, defend and hold ARE harmless from and against all claims, liabilities, damages, costs and expenses (including reasonable attorneys' fees) arising out of or in connection with any breach by Glacial Lakes, its affiliates, or its or their respective employees or agents of (i) the subleases of the Subleased Railcars to Glacial Lakes hereunder or (ii) any other agreement to which Glacial Lakes becomes a party with respect to the Subleased Railcars.

86. As a result of such breaches, ARE should be awarded its attorneys' fees and costs incurred in bringing and pursuing this action, as provided for in Section 5.F. of the Termination Agreement.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff ARE demands judgment against Defendant Glacial Lakes as follows:

A. An award of damages in an amount to be determined at trial, including more than $3.6 million incurred by ARE as a result of Glacial Lakes' breaches of the Termination Agreement and such additional amount as is determined by the Court in order to sufficiently and fully compensate ARE for the damages and losses that it has suffered as result of Glacial Lakes' actions.

B. An order declaring that ARE is entitled to offset the more than $3.6 million in damages it incurred as result of Glacial Lakes' breaches of the Termination Agreement against the amounts owed to Glacial Lakes ($339,071.90) on account of the Unpaid True-Up Payment.

C.  An order declaring that all amounts ARE owes to Glacial Lakes ($339,071.90) have been paid in full due to the offset of the damages incurred by ARE against the amounts owed for the Unpaid True-Up Payment.

D.  An award of damages against Glacial Lakes consisting of the net excess of the damages incurred by ARE as a result of Glacial Lakes' breaches of the Termination Agreement minus the amounts owed to Glacial Lakes ($339,071.90) for the Unpaid True-Up Payment.

E.  Payment of ARE's attorneys' fees and expenses incurred in connection with this action.

F.  Such other or further relief as the Court finds just and equitable.

AVENTINE RENEWABLE ENERGY, INC.


By: /s/ Thomas W. O'Neal
Thomas W. O'Neal
Attorney for the Plaintiff

Thomas W. O'Neal (ARDC No. 3127563)
Howard & Howard Attorneys, P.C.
211 Fulton Street, Suite 600
Peoria, IL 61602
Telephone:  (309) 672-1483
Facsimile:   (309) 672-1568
E-mail: toneal@howardandhoward.com

01:13911094.2

16